UNITED STATES of America, Plaintiff,

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, Defendant.**

No. 80 C 5124.

United States District Court, N.D. Illinois, E.D.

Aug. 15, 1984.

Paddy Harris McNamara, Chicago, Ill., Marsha L. Levick, Legal Defense & Educ. Fund, New York City, for intervenors.

Hugh R. McCombs, David Narefsky, Denise L. Jarrard, Isham, Lincoln & Beale, Robert C. Howard, Robert M. Weissbourd, Hartunian, Futterman & Howard, Chtd., Chicago, Ill., for defendant.

Alexander Ross, Sp. Litigation Counsel, Civ. Rights Div., Dept. of Justice, Washington, D.C., Margaret C. Gordon, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Now before this Court for decision is a motion by a group of petitioners (the "Applicants")[1] seeking to intervene as parties to this action. To set the framework for that motion, a brief skeletal review of the prior proceedings will be useful.

---

1. As described in Applicants' July 3, 1984 memorandum:

On September 24, 1980, the same day this action was filed, this Court entered a Consent Decree relating to the desegregation of the Chicago public schools. In January 1982 (in "Opinion I," 554 F.Supp. 912) this Court held constitutional the desegregation plan (the "Plan") developed by Chicago's Board of Education ("Board") in compliance with the Consent Decree. On June 30, 1983 (in "Opinion II," 567 F.Supp. 272) this Court found the United States had violated its obligation under Consent Decree § 15.1 to:

find and provide every available form of financial resources adequate for the implementation of the desegregation plan.

As part of its contemporaneously filed order, this Court:

1. to sustain the status quo, enjoined the United States from spending or obligating certain funds; and

2. ordered the United States to fulfill its obligations under the Consent Decree.

On September 9, 1983 our Court of Appeals affirmed (1) this Court's finding the United States had violated its Consent Decree obligation and (2) the injunction referred to in the preceding paragraph ("Opinion III," 717 F.2d 378, 385). To afford the United States the opportunity to show its intended compliance with its contractual commitments, the Court of Appeals remanded the case for further proceedings. This Court then conducted an evidentiary hearing and ruled on June 8, 1984 (in "Opinion IV," 588 F.Supp. 132, with its "Findings" and "Conclusions"):

1. Despite the opportunity afforded by the Court of Appeals, the United States had continued to act in violation of the Consent Decree.

Proposed intervenors are individuals and organizations who will be irreparably injured if the injunction issued by this Court is not now vacated. They include: 1) parents of female school-aged children enrolled in school districts currently benefitting from Title IV and WEEA–funded programs; 2) a teacher who has received training pursuant to federally funded programs; 3) directors and personnel

2. Under Section 15.1 the United States is obligated "to make every good faith effort to find and provide ... $103.858 million" for the forthcoming school year (Conclusion 38).

3. This Court's order restraining the obligation or spending of funds could be lifted when an order was entered in accordance with Opinion IV (Conclusion 118).

On July 13 this Court entered an order releasing certain funds from the restraining order, on Board's motion, to allow other grantees to continue their operations through August 11.

At this point Applicants come into court in an attempt to convince this Court they are the most "worthy" grantees for the currently restrained funds. For the reasons stated in this memorandum opinion and order, leave to intervene—either as of right or as a matter of this Court's discretion—is denied Applicants.

## Intervention as of Right

■ To intervene as a matter of right under Fed.R.Civ.P. ("Rule") 24(a)(2), Applicants must meet each of four conditions (*United States v. Board of Education of the City of Chicago*, 88 F.R.D. 679, 684 (N.D.Ill.1981)):

(1) The application must be timely.

(2) The applicant must claim an interest relating to the transaction that is the subject of the action.

(3) The applicant must show that its ability to protect that interest may as a practical matter be impaired or impeded by disposition of the action.

of twelve sex desegregation assistance centers ("sex DACs") throughout the country which will be forced to cease operations if their funding is cut off as of June 30, 1984; and, 4) the director of an independent organization engaged in preliminary negotiations with the Department of Education on a WEEA continuation grant for Fiscal Year 1984.

(4) The applicant's interest must not be adequately represented by the existing parties.

Because Applicants so clearly fail to meet the fourth requirement, there is no need to deal with the others.[2]

■ Applicants claim Secretary of Education ("Secretary") has selected their programs, through an administrative process, to receive the now-restrained funds in the event this Court releases those funds back to Secretary. Even assuming Secretary has in fact made an administrative commitment to Applicants' programs (not at all an established proposition, even on Applicants' own factual submissions), Applicants' interest is fully represented by the United States.

At each and every court appearance and filing, the United States has consistently and vigorously argued that all the funds currently subject to this Court's restraining order should be returned to Secretary's discretion.[3] Yet that is precisely the result Applicants desire. Nothing would be added by allowing another entity to advance the same argument to the same end. *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984).

Applicants contend the Executive Branch has a "secret agenda" to dismantle Title IV programs, thus making the United States antagonistic to them and unable to represent their interests adequately. What Applicants miss is that their claims are entirely derivative from that of the United States in any event. See *Meridian Homes*, 683 F.2d at 204. Only if the United States is successful here will the funds become available to Secretary, either to honor his claimed commitments to Applicants or to subvert them by his alleged secret agenda.[4] If the latter were to prove the case after the United States were successful in its position before this Court, that would be the potential subject of another lawsuit—not this one. In sum, Applicants have utterly failed to show why the United States does not adequately represent their interests in *this* action.

### Permissive Intervention

■ To support permissive intervention under Rule 24(b)(2), Applicants must show (1) their claim and the main action have a common question of law or fact and (2) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. As in the prior discussion, Applicants founder on the last criterion.

■ Applicants would have this Court embroil itself in lengthy proceedings to determine the most deserving recipients of limited federal dollars. Except for the United States' binding obligation under the Consent Decree, *that* value judgment is for Secretary—not this Court—to make. And were it impermissibly undertaken by this Court, it would carry this lawsuit far afield from its present (and proper) purpose.

---

2. This Court's analysis of the authorities confirms Applicants' wholly conditional interest in the restrained funds also lacks the "direct and substantial" character required by the second standard (see *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982); and—as to Applicants' dependence on the United States' grant determination—see also *Conset Corp. v. Community Services Administration*, 655 F.2d 1291, 1295 (D.C.Cir.1981); *Missouri Health and Medical Organization, Inc. v. United States*, 226 Ct.Cl. 274, 641 F.2d 870, 873–74 (1981)). It is however needless to lengthen this opinion unduly to discuss either that or the other criteria Applicants must satisfy.

3. Applicants have made no suggestion, nor could they in light of the case history, that this is a collusive action. See *Board of Education*, 88 F.R.D. at 686.

4. Were Secretary plotting to serve the "secret agenda" by lying down and playing dead in this lawsuit—thus diverting funds from Applicants to Board—matters would be very different. Of course that is not Applicants' thesis, nor is it borne out by the United States' stubborn (indeed intransigent) resistance to honoring its contractual undertakings to Board under the Consent Decree.

This Court's involvement on the funding issue is limited to determining the appropriate remedy for the United States' violation of its contractual commitment under the Consent Decree. To answer the wholly ancillary question Applicants seek to thrust upon this Court would substantially delay the proceedings necessary to deal with the problems properly at issue.

True enough, any remedy this Court must impose to alleviate the harm caused by the United States' cavalier attitude toward its freely-undertaken obligations will undoubtedly impact on other people and programs. But that can be true in every situation where one party is required to make another party whole. Applicants' assumption that this Court can and should adjudicate more than the dispute between the United States and Board is simply wrong. It is the United States that has stirred up this competitive attitude among grantees, misleading them to believe this Court has encroached on their "rights" to funding. But as this Court has stated again and again (most recently in Opinion IV, 588 F.Supp. at 138–140), the responsibility for violation of the Consent Decree and for the remedial steps that must be taken to make Board whole again lies directly with the United States.

Though the truth of the matter is patent, the United States' false portrayal of the competing considerations may make it worth repeating once more. This Court has already determined Board is eligible for the restrained funds, and Secretary has not otherwise unconditionally obligated such funds. To the extent the United States fails or refuses to meet its Consent Decree obligations through provisions of other funds, those restrained funds are potentially available to Board to fund its desegregation plan. If the United States does come up with other money to satisfy its obligation to Board, the restrained funds would be returned to Secretary for distribution according to Secretary's discretion.

Applicants' present motion is based upon a misconception—wrongly fostered by the United States—that this Court is somehow responsible for the present unavailability of funds. As Opinion IV states, that responsibility lies with the United States. But even were that not so, any choice among grantees *other than Board* is not for this Court to make.

### Conclusion

Applicants' motion to intervene is denied in its entirety.[5]

5. To the extent Applicants may want to bring any relevant matters (but not the relative merits of their claims to any restrained funds) to this Court's attention, they can request leave to file amicus curiae briefs. *Board of Education,* 88 F.R.D. at 688; *Piedmont Paper Products, Inc. v. American Financial Corp.,* 89 F.R.D. 41, 45 (S.D. Ohio 1980).